**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

CARMEN HIDALGO-ROSA,

    Plaintiff,

           v.

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.

**Civil No. 13-1373 (SEC)**

**OPINION AND ORDER**

Carmen Hidalgo-Rosa (Hidalgo) brought this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. Docket # 1. She then filed a memorandum supporting her request, Docket # 14, and the Commissioner opposed, Docket # 18. After reviewing the filings and the applicable law, the Commissioner's decision denying disability benefits is vacated, and this case is **REMANDED** for further proceedings.

**Factual and Procedural Background**

On June 24, 2010, Hidalgo filed an application for disability insurance benefits alleging a disability onset date of August 1, 2008. Administrative Transcript (Tr.) 436-38. Hidalgo, who at that time was in her late thirties, claimed to be disabled from full-time employment because of depression, body pain caused by osteoarthritis, sickle cell disease, ulcers, and epigastric pain. The application for disability benefits was denied initially and again upon reconsideration. Tr. 334-37, 362-63. She then sought a hearing before an administrative law judge (ALJ).

Duly represented by counsel, Hidalgo appeared at the hearing, which was held on May 1, 2012, and testified that she had to stop working because of sharp and pervasive "joint pain and a severe stomach problem." Tr. 31. She explained that in 2007 she was "fired" from her last job as a sewing machine operator "due to absences — absences due to medical reasons," Tr.

33, highlighting that "[t]he condition of . . . [her] hands," Tr. 34, contributed to her poor performance. When asked by the ALJ about whether she had had a "work-related injury" that caused these problems, Hidalgo riposted that she could not reckon how she "acquired all of these conditions," Tr. 37, but speculated that they could be related to her former job at "TJ Maxx," which required her to "lift a lot of weight and everything . . . [and she] had to use a machine all the time with . . . [her] hands." Tr. 38. She also testified that she could no longer "do any of the household chores," Tr. 32; that she does not even drive, Tr. 36; and that her pain medication provides only "little relief." Tr. 32.

The ALJ's decision concluded, at step four of the sequential evaluation process, that Hidalgo was not disabled. Tr. 21. In reaching that decision, the ALJ considered Hidalgo's age, her 9th grade education, and residual functional capacity (RFC). Tr. 18- 21. (The RFC "is the most . . . [Hidalgo] can still do despite . . . [her] limitations." 20 C.F.R. § 404.1545(a).) The ALJ also considered Hidalgo's medical records, including those from her treating doctors: Michael Babilonia (rheumatologist), and Jorge Negrón Baez (physician); and he reviewed Hidalgo's medical records from the consulting sources, to wit: Dr. Félix Rivera (gastroenterologist), and Hidalgo's progress notes at the *Administración de Servicios de Salud Mental y Contra la Adicción* (ASSMCA), where she received psychiatric treatment. At the hearing, the ALJ summoned Dr. German Malaret, "an internist and impartial medical expert," Tr. 19, whose opinion was afforded "great weight." Id. The ALJ also heard testimony from a vocational expert (VE), who testified that Hidalgo could perform past relevant work as a data entry clerk, sewing machine operator, and receptionist. Tr. 60.

The following excerpts from the ALJ's decision illustrate his methodology and findings:

1.  The claimant last met the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2008 through her date last insured of December 31, 2011.

**CIVIL NO. 13-1373 (SEC)**                                                                                        **Page 3**

   3.    Through the date last insured, the claimant had the following severe impairments: osteoarthritis, sickle cell disease, and gastrointestinal disorders.

   4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments . . . .

   5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the . . . [RFC] to perform light work . . . except for the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in a 8 hour day, stand and walk for 6 hours in a 8 hour day, never climb ladders or scaffolds, occasionally kneel, crouch, and crawl, and is limited to occasionally reaching above her head with both arms.

   6.    Through the date last insured, the claimant was capable of performing past relevant work as a data entry clerk, sewing machine operator, and receptionist.

   7.    The claimant was not under a disability . . . at any time from August 1, 2008, the alleged onset date, through December 31, 2011, the last insured.

Tr. 15-17 (internal citations and typeface omitted).

Dissatisfied with that determination, Hidalgo appealed, but the Appeals Council denied her

request for review, Tr. 1-3, rendering the ALJ's decision the final decision of the Commissioner

and, therefore, subject to judicial review. This appeal ensued. Docket # 1.

In this venue, Hidalgo musters three developed assignments of error.[1] She argues, first,

that the hypotheticals posed to the VE never reflected all of her limitations, because the ALJ's

RFC determination was inconsistent with the medical evidence—particularly with Dr. Malaret's

---

[1]Insofar as Hidalgo impugns the ALJ's determination that her mental impairments were not severe, see Docket # 14, pp. 4-5, that undeveloped argument—which contains not a single legal authority—was presented in a wholly perfunctory fashion. So it is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (reiterating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); see also Figueroa-Perea v. Comm'r of Soc. Sec., 78 F. App'x 134, 135 (1st Cir. 2003) (per curiam) (applying waiver in the social-security context). In all events, and for substantially the same reasons advanced by the Commissioner, see Docket # 18, pp. 6-7, the ALJ's decision on this front is supported by substantial evidence.

**CIVIL NO. 13-1373 (SEC)** **Page 4**

opinion (the testifying medical advisor whose opinion was afforded great weight by the ALJ)

that rendered Hidalgo unable to perform repetitive hand movements. Docket # 14, p. 5. Hidalgo

contends, second, that the ALJ's step-four findings violated the requirements of Social Security

Ruling 82-62. Id., pp. 6-7. And she posits, third, that the prevalence of inaudible parts in the

evidentiary hearing transcript bars a meaningful appellate review of the ALJ's decision. Id., p.

8.

The Commissioner opposed the first two assignments of error, but mounted no defense

of the third. See generally Docket # 18. The Court addresses these matters sequentially.

**Standard of Review**

The scope of appellate review is "limited to determining whether the ALJ deployed the

proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater,

172 F.3d 31, 35 (1st Cir.1999) (per curiam). To that end, § 405(g) provides that the

Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive," 42

U.S.C. § 405(g), and in Richardson v. Perales, 402 U.S. 389 (1971), the Supreme Court defined

"substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Id. at 401; Irlanda Ortiz v.

Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). So, even if the record could

justify a different conclusion, the Commissioner's findings must be affirmed if supported by

substantial evidence. Evangelista v. Secretary of H.H.S., 826 F.2d 136, 144 (1st Cir. 1987). This

is not to say, of course, that this deferential standard of judicial review amounts to rubber

stamping the Commissioner's decision. For the ALJ's factual findings are not conclusive "when

derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."

Nguyen, 172 F.3d at 35 (citations omitted). But absent a legal or factual error in the evaluation

of a claim, the Commissioner's denial of disability benefits stands. Seavey v. Barnhart, 276 F.3d

1, 15 (1st Cir. 2001).

**Applicable Law and Analysis**

*I.  Step Four*

At step four, a claimant will be found not disabled if she retains the RFC to perform "the actual functional demands and job duties of a particular past relevant job." Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir.1991) (per curiam) (internal quotation marks and citations omitted). A claimant is deemed capable of performing her past relevant work if her RFC allows her to do the job "[e]ither as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2); see Gray v. Heckler, 760 F.2d 369, 372 (1st Cir.1985) (per curiam). Of particular relevance to this case, Social Security Ruling 82-62 provides that step four in turn involves three phases: (1) "[a] finding of fact as to the individual's RFC"; (2) "[a] finding of fact as to the physical and mental demands of the past job/occupation"; and (3) "[a] finding of fact that the individual's RFC would permit a return to his or her past job." 1982 WL 31386, *4  (S.S.A 1982); accord Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000). Hidalgo, as the claimant, bears the initial burden to "lay the foundation as to what activities her former work entailed, [and to] . . . point out (unless obvious)—so as to put in issue—how her functional incapacity renders her unable to perform her former usual work." Roberts v. Barnhart, 67 F. App'x 621, 623 (1st Cir. 2003) (per curiam) (alterations and ellipsis in original) (quoting Santiago, 944 F.2d at 5). But once a claimant meets this initial burden, as Hidalgo did here,[2] "the ALJ must compare the physical and mental

---

[2] It suffices to say that Hidalgo testified at the hearing that, as a result of her conditions, she could not perform her prior job as a sewing machine operator, explaining that the problems she had with her hands rendered her unable to perform this job. Tr. 31-37; see also Tr. 111-115 (same about her other jobs). And the diagnosis of osteoarthritis, "which is an injury of the joints," Huffman v. Union Pac. R.R., 675 F.3d 412, 433 (5th Cir. 2012), cert. denied, 133 S. Ct. 840 (2013), provides a medical basis for her complaints, as one of the symptoms of this condition is joint pain. So contrary to the Commissioner's unpersuasive contention, see Docket # 18, p. 11, Hidalgo shouldered this initial burden of showing how her "functional incapacity renders her unable to perform her former usual work." Santiago, 944 F.2d at 5; cf. Roberts, 67 F. App'x at 622.

**CIVIL NO. 13-1373 (SEC)**                                                    **Page 6**

demands of that past work with current functional capability." Manso-Pizarro v. Sec'y of Health

& Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (per curiam) (citations omitted).

  *A. The RFC Determination*

  The RFC, being the threshold determination in the first phase of step four, see 20 C.F.R.

§§ 404.1520(f), 404.1560(b), the analysis starts here. Of course, the ALJ is responsible for

deciding a claimant's RFC. § 404.1546(c). But in reaching that determination, the ALJ must

consider all relevant medical evidence, including any statements about what the claimant can still

do provided by any medical sources, § 404.1545(a)(3), and "[s]ince bare medical findings are

unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to

assess claimant's residual functional capacity based on the bare medical record." Berrios Lopez

v. Sec'y of Health & Human Servs., 951 F.2d 427, 430 (1st Cir. 1991) (per curiam). As detailed

above, the ALJ determined that Hidalgo had the RFC to perform

> light work . . . except for the following limitations: lift and carry 20 pounds
> occasionally and 10 pounds frequently, sit for 6 hours in a 8 hour day, stand and
> walk for 6 hours in a 8 hour day, never climb ladders or scaffolds, occasionally
> kneel, crouch, and crawl, and is limited to occasionally reaching above her head
> with both arms.

Tr. 17. ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or

carrying of objects weighing up to 10 pounds . . . ." § 404.1567(b).) The ALJ then found that her

past relevant work as "data entry clerk, sewing machine operator, and receptionist" consisted of

"light" work. Tr. 21. Ultimately, the ALJ concluded, Hidalgo had the RFC to perform these three

jobs. Id.

  As said, Hidalgo contends that this RFC is unsupported by substantial evidence, because

the ALJ impermissibly rejected Dr. Malaret's opinion about Hidalgo's limitations on repetitive

hand movements. Docket # 14, p. 7. The Commissioner demurs, arguing that such a limitation

"should [not] have been included in the RFC . . . because it was contradicted by medical

evidence." Docket # 18, p. 10. Although Dr. Malaret's opinion "was afforded great weight," the

Commissioner's thesis runs, "the ALJ determined that Dr. Babilonia's . . . opinion was entitled to controlling weight and it correctly assessed that Plaintiff had no limitations in hand movements." Id., pp 10-11.

The Court agrees with Hidalgo that substantial evidence does not support the ALJ's implicit determination that Hidalgo's hands remained intact. Although the Commissioner is right, see Docket #18, p. 11, that a "conflict between the personal physician and the medical advisor was for the . . . [ALJ] to resolve," Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir. 1982) (per curiam) (citation omitted), the problem here is that the ALJ's decision simply ignored Dr. Malaret's testimony about Hidalgo's apparent hand limitations. But the ALJ had to "evaluate the record fairly," Golembiewski v. Barnhart, 322 F.3d 912, 917 (7th Cir. 2003) (per curiam), so he could "not ignore an entire line of evidence that is contrary to the ruling . . . ." Id. (citation omitted); accord, e.g., Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam) (holding that ALJ "could not simply ignore Serabian's opinion," but, rather, was required to weigh all of the evidence" (citing 20 C.F.R. §§ 416.920(a)(3), 416.920a (a) & (c); 416.927(c))); Brunel v. Comm'r, Soc. Sec. Admin., 248 F.3d 1126, 2000 WL 1815946, *2 (1st Cir. 2000) (per curiam) (unpublished) ("The ALJ's failure to explain why he discredited this evidence was a serious error."). It bears emphasis that the ALJ opted to summon Dr. Malaret to testify at the evidentiary hearing; and Dr. Malaret interpreted the raw medical data contained in the record—most notably Babilonia's medical records.[3] And yet, barring Hidalgo's limitations on repetitive hand movements and joint pain, the other limitations mentioned by Dr.

---

[3] Compare Rodríguez v. Sec'y of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989) (per curiam) (approving use of "testimony of the non-examining medical advisor . . . not to assess claimant's medical condition, but to assess claimant's residual functional capacity based on evaluations of claimant's medical condition submitted by examining physicians"); with Tr. 19 ("Dr. Malaret is a specialist who had the opportunity to examine all the record evidence and his opinion is consistent with the substantial evidence contained in the medical record."); and Tr. 44 (construing and discussing Dr. Babilonia's medical findings).

**CIVIL NO. 13-1373 (SEC)** **Page 8**

Malaret were incorporated into the ALJ's RFC determination, compare Tr. 17; with Tr. 41-42;

and this might explain why the ALJ afforded only "great weight" to Dr. Malaret's opinion. Cf.

Torres v. Sec'y of Health & Human Servs., 870 F.2d 742, 744 (1st Cir. 1989) (per curiam)

(noting that ALJ may afford greater weight to the opinion of a nonexamining expert who, like

Dr. Malaret, testified at hearing and was cross-examined).

The Commissioner resists this conclusion, positing that Dr. Malaret's opinion on this

point "should [not] have been included in the RFC . . . because it was contradicted by medical

evidence." Docket # 18, p. 10. But that portion of the Commissioner's brief violates the Chenery

doctrine, see SEC v. Chenery Corp., 318 U.S. 80, 63 (1943); Hughes v. Astrue, 705 F.3d 276,

279 (7th Cir. 2013) (Posner, J.), because the ALJ neither stated nor implied that rationale in his

decision; quite simply, he identified not a single reason to discard Dr. Malaret's conflicting

opinion on that point, although the ALJ made clear that Dr. Malaret's "opinion is consistent with

the substantial evidence contained in the medical record." Tr. 19.

In all events, the Commissioner's asseveration is, for the reasons just given, dubious. And

the ALJ's almost single-minded reliance on "objective medical evidence," such as "X-rays," Tr.

19, buttresses this skepticism. This is because "radiography is ordinarily of less value than

clinical findings in the diagnosis of osteoarthritis," Venable v. Astrue, No. 07-0061, 2008 WL

2950993, *6 (W.D. Va.), R&R adopted, 2008 WL 3887647 (W.D. Va. Aug. 21, 2008), not least

because "[d]iagnosis [of osteoarthritis] is usually based on symptoms and signs . . . ." Carbone

v. Sullivan, 960 F.2d 143 (1st Cir. 1992) (first alteration in original) (quoting Merck Manual

1260 (15th ed. 1987)); see also Johnson v. Astrue, 597 F.3d 409, 413 (1st Cir. 2009) (per curiam)

(holding, in a similar context (fibromyalgia), that subjective pain testimony cannot be rejected

on the sole ground that it is not fully corroborated by objective medical evidence); Tompkins v.

Colvin, No. 13-73, 2014 WL 294474, *5 (D.Me. Jan. 27, 2014) ("unlike in Johnson, the

administrative law judge's reasons for rejecting the [treating physicians'] RFC opinion were

**CIVIL NO. 13-1373 (SEC)**                                                    **Page 9**

premised on specific findings rather than a misunderstanding of the nature of fibromyalgia.").

And it appears from Dr. Malaret's testimony, see Tr. 43, that he understood the nature of

osteoarthritis. (As discussed below, that portion of his testimony is, alas, admittedly unclear,

given the multiple inaudible portions.)

Be that as it may, other probative evidence in the record, Hidalgo persuasively maintains,

casts serious doubt on the correctness of the ALJ's unexplained refusal to credit his medical

advisor's supportable interpretation—which entailed, of course, reviewing some of Dr.

Babilonia's unintelligible records, see Tr. 621—of Hidalgo's medical records. Cf. Freeman v.

Barnhart, 274 F.3d 606, 609 (1st Cir. 2001) (holding that "the ALJ's decision was in error

because it was not supported by substantial evidence—specifically, because the vocational

expert's testimony appears to contradict pertinent findings by the ALJ"). For one thing, even Dr.

Babilonia, the ALJ acknowledged, diagnosed Hidalgo with osteoarthritis and "joints pain," Tr.

18, for which he presumably prescribed "Oxycodone." Tr. 484; Dr. Babilonia also opined that

Hidalgo's "[m]usculoskeletal" was not "normal." Tr. 621. And a bone scan "show[ed] mild

increased radiotracer uptake in several interphalangeal and carpal joints of both hands . . .

suggestive of inflammatory process of joints," Tr. 616, which is telling, because osteoarthritis

is "a  synonym for degenerative arthritis." Lockamy v. Shinseki, No. 09-3227, 2010 WL

5141223, * 1 n. 1 (Vet. App. Dec. 13, 2010) (unpublished mem.) (emphasis added) (quoting

Steadman's Medical Dictionary 149 (27th ed. 2000)). For another, Dr. Negrón, Hidalgo's

primary physician—whose opinion was admittedly afforded "little weight" by the

ALJ—diagnosed Hidalgo with "[s]evere osteoarthritis," Tr. 225, noting that she could rarely lift

less than 10 pounds, Tr. 714; he further opined that Hidalgo could use her hands for less than

10 minutes. Tr. 715. And the record, to be sure, is rife with other conflicting (albeit subjective)

evidence. E.g., Tr. 41 (Dr. Malaret's testimony that Hidalgo "has pain in her muscles and in

multiple joints");Tr. 481 (Hidalgo's statement that she cannot "perform repetitive movements");

Tr. 493 (Hidalgo's statement about her being unable to "squeeze or grab things"). The point, in

**CIVIL NO. 13-1373 (SEC)**                                                                     **Page 10**

short, is that the foregoing shows that the ALJ's unexplained omission of that (conflicting and probative) part of Dr. Malaret's opinion deprived Hidalgo of a meaningful appellate review. See, e.g., Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999) ("When a conflict in evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.' The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." (internal citation omitted)); Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir.1996) (holding that "[t]he record must demonstrate that the ALJ . . . "discuss[ed] probative evidence he reject[ed]"); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987) (noting that ALJ must state with particularity the weight given different medical opinions and the reasons for doing so);1982 WL 31386, *4 (disability decision must give a "clear picture of the case," follow an "orderly pattern," and show how the "specific evidence leads to a conclusion"). Indeed, one would expect that, having afforded "great weight" to that opinion, and given the conflicting evidence just discussed, the ALJ would have at least attempted to justify his jettisoning of Dr. Malaret's opinion that Hidalgo's hands were plainly not intact.

    If more were needed, judicial review of the ALJ's decision, Hidalgo correctly maintains (and the Commissioner does not dispute), has been hampered by the inordinate amount of inaudible testimony in the hearing transcript. Suffice it to say that the 16-page transcript of Dr. Malaret's testimony—including portions of Dr. Malaret's crucial testimony about Hidalgo's physical limitations, see Tr. 41-43—contains at least 52 inaudible portions. Tr. 39-55. Similar flaws afflict the transcript of the VE, see Tr. 56-72, whose testimony appears to have been entirely relied upon by the ALJ in concluding that Hidalgo could return to her past work. This is beyond the pale. And a remand is warranted, because the missing portions of the transcript, coupled with the shortcomings elucidated above, prevent a meaningful judicial review of the ALJ's decision. See generally, e.g., Vega-Velez v. Comm'r of Soc. Sec., No. 09-1815, 2009 WL 5947263, *1 (D.P.R. Dec. 28, 2009);Cooper v. Astrue, No. 10-871, 2011 WL 2748642, *3 (W.D.

**CIVIL NO. 13-1373 (SEC)** **Page 11**

Okla.), R&R adopted, 2011 WL 2728772 (W.D. Okla. July 13, 2011); Koning v. Bowen, 675 F. Supp. 452, 457 (N.D. Ind. 1987); Marshall v. Schweiker, 688 F.2d 55, 56 (8th Cir. 1982) (per curiam).

Substantial evidence, then, supports neither the ALJ's unexplained jettisoning of Dr. Malaret's opinion about Hidalgo's apparent hand limitations, nor the ALJ's implicit determination that Hidalgo's hands remained intact. And although substantial evidence may support an eventual conclusion that, notwithstanding Dr. Malaret's opinion on Hidalgo's hand limitations, Hidalgo is nonetheless not disabled, this court is "not in a position to draw factual conclusions on behalf of the ALJ." Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001) (citation and internal quotation marks omitted); accord Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir.1996) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). The need for "sufficient reasoning" retains considerable bite where, as here, "the ALJ has concluded that plaintiff has the capacity to perform work in an occupation that requires extensive use of one's hands." Spicer v. Barnhart, 64 F. App'x 173, 178 (10th Cir. 2003) (per curiam).[4]

The upshot is that the ALJ's comparison of the demands of Hidalgo's past work with her physical functional capacity, "being based on an invalid RFC assessment, is not supported by substantial evidence." Roberts, 67 F. App'x at 623. Remand for further factual development is therefore necessary. Cf. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (holding that "remand is not essential if it will amount to no more than an empty exercise").

---

[4] See Chaney v. Colvin, No. 12-1233, 2013 WL 6050153, *5 (W.D. Okla. Nov. 15, 2013) (noting that "the work of a data entry clerk requires frequent handling"); Siqueiros v. Colvin, No. 12-1790, 2013 WL 6732885, *2 (C.D. Cal. Dec. 19, 2013) ("the DOT provides that the sewing machine operator job requires frequent handling[.]" (citation omitted)); DICOT 237.367-038, 1991 WL 672192,*2 (providing that the "receptionist" job requires frequent handling and reaching); see also Young-Moore v. Colvin, No. 12-195, 2014 WL 939457, *18 (N.D. Ind. Mar. 11, 2014) (finding "data entry clerk job requires constant fingering" (citation omitted)).

**CIVIL NO. 13-1373 (SEC)**                                                                    **Page 12**

*B. The Past Relevant Work Determination*

Because the Court remands for further development of the record, it need not reach Hidalgo's remaining appellate contention that the ALJ improperly determined the "physical and mental demands of jobs a claimant has performed in the past . . . ." S.S.R. 82-62, 1982 WL 31386, *4; accord Manso-Pizarro, 76 F.3d at 19 n. 6; Watkins v. Barnhart, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). Withal, the Court adds a coda.

Here, it is far from clear whether, contrary to the ALJ's determination, Hidalgo's RFC—particularly her limitations on "occasionally reaching above her head with both arms," Tr. 17 (emphasis added)—would preclude performance of her past relevant work. See Lamb v. Colvin, No. 13-0137, 2014 WL 3894919, *7 (E.D. Cal. Aug. 4, 2014) (finding that the "secretary" job requires "either frequent or occasional omni-directional reaching according to the DOT"); Carroll v. Colvin, No. 12-1181, 2013 WL 1935250, *1 (C.D. Cal. May 8, 2013) (noting that the Commissioner "conced[ed] that the . . . sewing machine operator [job] would require frequent reaching[,] and that the VE was mistaken when testifying that plaintiff could engage in these work activities"); DICOT 203.582-054, 1991 WL 671700 (providing that the "data entry clerk" job requires frequent handling and reaching). Worse, neither the VE's testimony nor the ALJ's decision discussed how Hidalgo actually performed her past relevant work. In this context, this court has criticized the practice of relying entirely on a VE's factual findings to determine the physical and mental demands of a claimant's past work and whether her RFC would permit a return to that work. Alicea-Roman v. Comm'r of Soc. Sec., No. 10-1707, 2011 WL 5325659, *6 (D.P.R. Nov. 3, 2011) (Casellas, J.) (citing Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir.1996)); accord Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("Because the ALJ made very few findings and relied largely on the conclusions of the vocational expert, it is difficult for this Court to review his decision."). It thus remains an open

**CIVIL NO. 13-1373 (SEC)**                                                    **Page 13**

question whether the ALJ appropriately compared the physical and mental demands of Hidalgo's past work with her RFC, as specifically required by Social Security 82-62. See, e.g., Ramos-Albelo v. Secretary of Health & Human Services, No. 92-1650, 1992 WL 340884, *4 (1st Cir. Nov. 23, 1992) (per curiam) (unpublished) (remarking that ALJ "has a responsibility to make 'every effort' to secure evidence and develop the record regarding a claimant's ability to do past work" (citation omitted); Corcoran v. Astrue, No. 09-3230, 2011 WL 2023292, *8 (D. Mass. Apr. 25, 2011); Ruiz-González v. Astrue, No. 09-1841, 2011 WL 381734, *10 (D.P.R. Feb. 5, 2011); Mercado v. Comm'r of Soc. Sec., 767 F. Supp. 2d 278, 286 (D.P.R. 2010); Curtis v. Sullivan, 808 F. Supp. 917, 923 (D.N.H. 1992); May v. Bowen, 663 F. Supp. 388, 394 (D. Me. 1987) (Cyr, C.J.)

**Conclusion**

For the reasons stated, the Court **REMANDS** this case to the Commissioner for further findings and proceedings consistent with this opinion. On remand, the Commissioner must recalculate Hidalgo's RFC based on the record as a whole, but with special emphasis on reconciling the contradictory medical evidence about her alleged manipulative limitations and their impact (if any) on her occupational base.

**IT IS SO ORDERED**

In San Juan, Puerto Rico, this 28th day of August, 2014.

> *s/ Salvador E. Casellas*
> SALVADOR E. CASELLAS
> U.S. Senior District Judge